**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Case No. 25-cv-03120-NYW

JOSE MANUEL LOA CABALLERO,

      Petitioner,

v.

JUAN BALTAZAR, Warden of the Denver Contract Detention Facility, Aurora, Colorado, in his official capacity;
ROBERT GUADIAN, Field Office Director, Denver Field Office, U.S. Immigration and Customs Enforcement, in his official capacity;
KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity;
TODD LYONS, Acting Director of Immigration and Customs Enforcement, in his official capacity; and
PAM BONDI, Attorney General, U.S. Department of Justice, in her official capacity;

      Respondents.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on the Verified Petition for Writ of Habeas Corpus (the "Petition"), [Doc. 1], and Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (the "Motion" or "Motion for TRO"), [Doc. 6]. The Petition and the Motion seek the same relief—an order directing Petitioner's immediate release from custody or requiring a bond hearing within seven days. [Doc. 1 at 15; Doc. 6 at 15]. For the reasons set forth below, the Petition is **GRANTED in part** and the Motion for TRO is **DENIED as moot**.

## BACKGROUND

Petitioner Jose Manuel Loa Caballero ("Petitioner" or "Mr. Loa Caballero") is a citizen of Mexico who has lived in the United States for nearly 20 years. [Doc. 6-2 at 2;

Doc. 1 at ¶ 3]. He was taken into ICE custody in September 2025 and has been held without a bond hearing ever since. [Doc. 1 at ¶ 36]. The Department of Homeland Security ("DHS") issued a Notice to Appear that designates Mr. Loa Caballero as a noncitizen "present in the United States who has not been admitted or paroled." [Doc. 6-2 at 2]. DHS also issued a Notice of Custody Determination that states Mr. Loa Caballero is detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act" ("INA"), which is codified at 8 U.S.C. § 1226, and related regulations. [*Id.* at 6]. However, the Government now purports to detain Mr. Loa Caballero under a different statute: 8 U.S.C. § 1225(b)(2)(A). *See* [Doc. 1 at ¶¶ 17, 24, 43; Doc. 13-1 at ¶ 13].

Mr. Loa Caballero filed his Petition on October 3, 2025, seeking (1) a writ of habeas corpus requiring Respondents to release him or provide him a bond hearing within seven days; (2) an order enjoining Respondents from transferring him outside of the Court's jurisdiction pending the resolution of the case; and (3) attorney's fees and costs. [Doc. 1 at 15–16]. That same day, Petitioner filed his Motion for TRO, which similarly seeks a Court order requiring Petitioner's release or ordering a prompt bond hearing. [Doc. 6 at 15]. In order to preserve the Court's jurisdiction over this case, the Court ordered that Mr. Loa Caballero shall not be removed from the District of Colorado or the United States until that order is vacated by this Court or the United States Court of Appeals for the Tenth Circuit. [Doc. 7 at 3]. The Court also ordered Respondents[1] to

---

[1] "Respondents" refers to Juan Baltazar, the Warden of the Denver Contract Detention Facility; Robert Guadian, the Field Office Director of the Denver ICE Field Office; Kristi Noem, the Secretary of the United States Department of Homeland Security; Todd Lyons, the Acting Director of ICE; and Pam Bondi, the United States Attorney General. *See* [Doc. 1 at 1].

respond to the Motion for TRO and to also show cause why the Petition should not be granted. [*Id.* at 2]. Respondents filed a joint response to the Petition and the Motion on October 14, 2025, [Doc. 13], and Petitioner filed a reply on October 15, 2025, [Doc. 16]. No Party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary. *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature").

## LEGAL STANDARD

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## ANALYSIS

### I.    Jurisdiction

As a preliminary matter, Respondents argue that this Court lacks jurisdiction over Mr. Loa Caballero's habeas claims. [Doc. 13 at 7–8]. Respondents' argument relies on 8 U.S.C. §§ 1252(a)(5) and (b)(9). *See* [*id.*]. Section 1252(a)(5) states, in relevant part, that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal

entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5). And § 1252(b)(9) provides that

> [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

*Id.* § 1252(b)(9). Respondents argue that through these statutory provisions, Congress "provided noncitizens like Petitioner with a vehicle to challenge the basis on which ICE seeks to detain and remove them—in immigration proceedings and then in the court of appeals." [Doc. 13 at 7]. In their view, "[t]he decision that Petitioner is subject to Section 1225(b)(2)(A) is a question of law arising from his removal proceedings" and can be reviewed only "by the immigration court, and ultimately by the appropriate court of appeals." [*Id.* at 8].

The Court respectfully disagrees. Section 1252(a)(5) plainly eliminates district courts' jurisdiction to review "order[s] of removal." 8 U.S.C. § 1252(a)(5). Here, the Petition does not allege that Mr. Loa Caballero is subject to an order of removal, let alone challenge or seek review of any such order. *See* [Doc. 1]. This subsection thus does not deprive the Court of jurisdiction over Mr. Loa Caballero's habeas claims. *J.O.E. v. Bondi*, --- F. Supp. 3d ----, 2025 WL 2466670, at *7 (D. Minn. Aug. 27, 2025). Moreover, "§ 1252(b)(9) cannot insulate unconstitutional detention from judicial review." *Maldonado v. Olson*, --- F. Supp. 3d ----, 2025 WL 2374411, at *7 (D. Minn. Aug. 15, 2025). The Supreme Court has instructed against interpreting § 1252(b)(9)'s "arising from" language in an "expansive" or "extreme" way. *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). As the Court explained, legal questions do not "aris[e] from" actions taken to remove a

non-citizen simply because the legal questions exist in the context of removal proceedings:

> Suppose . . . that a detained alien wishes to assert a claim under *Bivens* . . . based on allegedly inhumane conditions of confinement. . . . Or suppose that a detained alien brings a state-law claim for assault against a guard or fellow detainee. Or suppose that an alien is injured when a truck hits the bus transporting aliens to a detention facility, and the alien sues the driver or owner of the truck. The "questions of law and fact" in all those cases could be said to "aris[e] from" actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention. But cramming judicial review of those questions into the review of final removal orders would be absurd.

*Id.* at 293. Because the detainees in *Jennings* were not "asking for review of an order of removal," were not "challenging the decision to detain them in the first place or to seek removal," and were "not even challenging any party of the process by which their removability will be determined," the Supreme Court concluded that § 1252(b)(9) did "not present a jurisdictional bar." *Id.* at 294–95. *Jennings* "clearly demonstrate[s] that this Court has jurisdiction to determine what legal authority governed Petitioner's detention and whether, as a result, Petitioner was entitled to a bond hearing." *Romero v. Hyde*, --- F. Supp. 3d ----, 2025 WL 2403827, at *4 (D. Mass. Aug. 19, 2025).

Respondents attempt to distinguish *Jennings* by asserting that Petitioner here challenges "the *initial* determination of ICE to seek removal and detain a noncitizen based on the determination that § 1225 applies to the noncitizen." [Doc. 13 at 9 n.2]. This argument mischaracterizes Petitioner's habeas challenge. Mr. Loa Caballero clearly challenges the legality of his mandatory detention without a bond hearing. *See, e.g.*, [Doc. 1 at ¶¶ 2, 24, 30–31; *id.* at ¶ 40 ("Applying § 1225 to Mr. Loa Caballero unlawfully mandates his continued detention without a bond hearing and violates 8 U.S.C. § 1226(a)."); *id.* at ¶ 53 ("Respondents' detention of Mr. Loa Caballero without providing

him a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to Due Process.")].  The Supreme Court has made clear that § 1252(b)(9) does not bar this type of challenge.  *See Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (recognizing a distinction between an initial detention decision and a decision denying a bond hearing); *see also Romero*, 2025 WL 2403827, at *5 ("[C]hallenging denial of a bond hearing is not the same thing as challenging the initial detention decision.").

The Court is similarly unpersuaded by Respondents' reliance on *J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016), which they cite for the proposition that "any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the [petition-for-review] process," [Doc. 13 at 7 (quoting *J.E.F.M.*, 837 F.3d at 1031 (alteration in original))].  This limited excerpt from *J.E.F.M.* fails to reflect the full statutory analysis in the Ninth Circuit's decision.  Notwithstanding the statute's seemingly broad scope, the *J.E.F.M.* court highlighted § 1252(b)(9)'s "built-in limits."  837 F.3d at 1032. "By channeling only those questions 'arising from any action taken or proceeding brought to remove an alien,'" the statute does not create a jurisdictional bar over "any claim that does not arise from removal proceedings."  *Id.* (quoting 8 U.S.C. § § 1252(b)(9)). "Accordingly, claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)."  *Id.*

"Although one would expect that a dispute over the propriety of detention pending removal proceedings would be something other than collateral to the removal process, that is not the way it turns out in practice."  *de Oliveira v. Joyce*, No. 2:25-cv-00291-LEW, 2025 WL 1826118, at *3 (D. Me. July 2, 2025) (district court had jurisdiction over

challenge involving "the 'statutory framework' that subjects [the detainee] to mandatory detention without the possibility of release on bond").  As a number of other district courts have held, § 1252(b)(9) "does not insulate detention orders from judicial review because they are 'separate and apart from' orders of removal."  *Hasan v. Crawford*, --- F. Supp. 3d ----, 2025 WL 2682255, at *4 (E.D. Va. Sept. 19, 2025) (quoting 8 C.F.R. § 1003.19(d)); *see also, e.g.*, *Quispe v. Crawford*, No. 1:25-cv-01471-AJT-LRV, 2025 WL 2783799, at *3 (E.D. Va. Sept. 29, 2025) (challenge to constitutionality of continued detention, which did not challenge the commencement or adjudication of removal proceedings or the execution of any removal order, was independent of and collateral to the removal process); *Guerrero Orellana v. Moniz*, --- F. Supp. 3d ----, 2025 WL 2809996, at *3 (D. Mass. Oct. 3, 2025) ("Contrary to the government's argument, Guerrero Orellana's claims directly challenge the legality of his ongoing immigration detention without a bond hearing and are not a collateral attack on his removal proceedings. . . .  [Section] 1252(b)(9) poses no obstacle to the Court's consideration of this lawsuit."); *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025) (deciding the same).[2]

---

[2] Respondents also suggest that Mr. Loa Caballero can raise his legal challenges "through his immigration court proceedings, and if he is unsuccessful, in the court of appeals," without any explanation as to how Petitioner could do so.  [Doc. 13 at 8].  However, "[a] petition for review with the BIA and then the court of appeals cannot substitute for habeas review of ongoing detention."  *A.A. v. Olson*, No. 25-cv-03381-JWB-DJF, 2025 WL 2886729, at *6 (D. Minn. Oct. 8, 2025).  "While challenges to *removal* can be heard in a petition for review after an order of removal has been entered by an immigration judge and affirmed by the Board of Immigration Appeals, the same is not true of constitutional challenges to *detention* like the ones raised by" Petitioner here.  *Ozturk v. Hyde*, 136 F.4th 382, 400 (2d Cir. 2025).  Indeed, "neither the [immigration judge] nor the BIA has jurisdiction to decide constitutional issues."  *Id.* (quotation omitted).  "Nor does the [Tenth] Circuit have authority to conduct or order a bond hearing in the first instance; its review of immigration matters is limited to the administrative record accompanying a

Mr. Loa Caballero does not ask this Court to review an order of removal, does not challenge the decision to detain him in the first place or the initiation of removal proceedings, and does not challenge the process by which his removability will be determined. Instead, he plainly challenges the legality of his continued detention without a bond hearing. Section 1252(b)(9) "does not present a jurisdictional bar" in this case. *Nielsen*, 586 U.S. at 402 (quoting *Jennings*, 583 U.S. at 295); *Hernandez Marcelo v. Trump*, No. --- F. Supp. 3d ----, 2025 WL 2741230, at *6 (S.D. Iowa Sept. 10, 2025) (finding §§ 1252(a)(5) and (b)(9) inapplicable because the habeas petitioner was challenging his detention without a bond hearing, not an order of removal). The Court proceeds to the Parties' arguments on the merits.

## II.    Merits

Mr. Loa Caballero argues that his continued mandatory detention without a bond hearing is unlawful in that it (1) violates the INA; (2) violates INA bond regulations; (3) violates the Administrative Procedure Act ("APA"); and (4) violates his Fifth Amendment due process rights. [Doc. 1 at 12–14]. Central to Petitioner's claims is the Parties' disagreement over which statute authorizes his detention: § 1225 or § 1226.

### A.    Whether Petitioner is Detained Under § 1225 or § 1226

#### 1.    Statutory Framework

Detention of noncitizens prior to a final order of removal is governed by 8 U.S.C. §§ 1225 and 1226. *See Jennings*, 583 U.S. at 287. Section 1226 "sets forth 'the default rule' for detaining noncitizens 'already present in the United States.'" *Quispe-Ardiles*, 2025 WL 2783800, at *5 (quoting *Jennings*, 583 U.S. at 303). Subject to certain

---

final removal order." *A.A.*, 2025 WL 2886729, at *6 (citing 8 U.S.C. § 1252(b)(4)(A)).

exceptions not applicable here, this subsection permits, but does not require, the Attorney General to detain noncitizens pending removal proceedings. *Jennings*, 583 U.S. at 303; 8 U.S.C. § 1226(a)(1)–(2) (the Attorney General "*may* continue to detain" or "*may* release" the noncitizen (emphasis added)). Section 1226(a) thus establishes a discretionary framework for the detention of noncitizens pending removal proceedings.

Section 1225(b) "supplement[s] § 1226's detention scheme." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246 (W.D. Wash. 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)). Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States," i.e., "applicants for admission." *Jennings*, 583 U.S. at 297; *see also* 8 U.S.C. § 1225(a)(1) (defining "applicant for admission" as a person "present in the United States who has not been admitted or who arrives in the United States"). This section provides, in relevant part, that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained" pending removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added).[3] Absent an exception for urgent humanitarian reasons not implicated in this case, "detention under § 1225(b)(2) is considered mandatory," and "[i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, ---

---

[3] Under 8 U.S.C. § 1225(b)(1), "certain applicants for admission who are deemed inadmissible are subject to expedited removal, unless they express a fear of persecution or an intent to apply for asylum." *Guerrero Orellana*, 2025 WL 2809996, at *2; *see also* 8 U.S.C. § 1225(b)(1)(A)(i) (directing an immigration officer to "order [a person deemed inadmissible] removed from the United States without further hearing or review unless [the person] indicates either an intention to apply for asylum . . . or a fear of persecution"). Respondents do not argue that Petitioner is detained pursuant to § 1225(b)(1), *see* [Doc. 13], so the Court does not substantively address detention under this subsection.

F. Supp. 3d ----, 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025) (citing *Jennings*, 583 U.S. at 297).

Respondents assert that Petitioner is detained pursuant to § 1225(b)(2)(A), so his detention is mandatory pending completion of removal proceedings. [Doc. 13 at 9]. Mr. Loa Caballero disagrees, arguing that his detention falls under the umbrella of § 1226(a), such that he is entitled to a bond hearing. [Doc. 1 at ¶¶ 30–32, 39]. He argues that § 1225(b) applies to noncitizens arriving and "seeking admission" to the United States "who are apprehended at the border or port of entry." [*Id.* at ¶¶ 15, 33]. In his view, § 1226 "applies to noncitizens like Mr. Loa Caballero who are present without inspection, face inadmissibility charges in removal proceedings due to their entrance without inspection, and who do not have certain criminal legal contacts." [*Id.* at ¶ 32].

Mr. Loa Caballero's habeas petition joins a growing list of formal challenges to the Government's interpretation and application of §§ 1225 and 1226, and federal district courts have overwhelmingly rejected Respondents' "broad interpretation of section 1225(b)(2)." *See, e.g.*, *Chogllo Chafla v. Scott*, No. 2:25-cv-00437-SDN, 2025 WL 2688541, at *5 (D. Me. Sept. 22, 2025) (collecting cases); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at *5 n.8 (N.D. Ill. Oct. 16, 2025) (collecting cases). For the reasons set forth below, the Court agrees with the weight of authority across the country.

### 2.   Interpreting § 1225 and § 1226

When interpreting a statute, the Court's primary task is to determine and effectuate congressional intent. *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613 (10th Cir. 2018). This analysis starts with the text of the statute itself. *Id.* The words of

a statute are given "their ordinary meanings, considering 'both the specific context in which the word is used and the broader context of the statute as a whole.'" *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018) (quoting *United States v. Theis*, 853 F.3d 1178, 1181 (10th Cir. 2017)). If "the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41 (1989).

The Court starts with the statutory language. *Potts*, 908 F.3d at 613. Section 1225 provides, in relevant part:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Under the statute, an "applicant for admission" is

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters).

*Id.* § 1225(a)(1).

Respondents contend that Petitioner is an "applicant for admission" under the statute because "he has not made a 'lawful entry [into the country] after inspection and authorization by an immigration officer,'" so he has not been "admitted" into the country. [Doc. 13 at 9 (quoting 8 U.S.C. § 1101(a)(13)(A))]. They assert that § 1225 "makes clear that 'applicants for admission' includes *both* those just arriving in the United States and those who entered without inspection *and* have been residing here." [*Id.* at 10]. In other words, Respondents take the position that a noncitizen who entered the country without inspection is always an "applicant for admission" and subject to mandatory detention

under § 1225, no matter how long the noncitizen has been present in the country.  Mr. Loa Caballero responds that the definition of "applicant for admission" found in § 1225(b)(a)(1) "does not control for § 1225(b)(2), which does not apply to *all* applicants for admission, but only those actively 'seeking admission' at the border."  [Doc. 16 at 6]; *see also* 8 U.S.C. § 1225(b)(2)(A).

The Court agrees that Respondents' interpretation of the statute is contrary to its plain language.  The weight of authority interpreting § 1225 has recognized that "for section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is:  (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'"  *Martinez v. Hyde*, No. 25-cv-11613-BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025) (quoting 8 U.S.C. § 1225(b)(2)(A)), *appeal docketed*, No. 25-1902 (1st Cir. Sep. 29, 2025); *see also Jimenez v. FCI Berlin, Warden*, --- F. Supp. 3d ----, 2025 WL 2639390, at *4 (D.N.H. Sept. 8, 2025); *Elias Escobar v. Hyde*, No. 1:25-cv-12620-IT, 2025 WL 2823324, at *1 (D. Mass. Oct. 3, 2025).  "Seeking" means "try[ing] to acquire or gain." *Seeking*, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking (last visited October 22, 2025); *see also Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1291 (10th Cir. 2024) ("Dictionary definitions are useful touchstones to determine the 'ordinary meaning' of an undefined statutory term." (quotation omitted)).  And "admission" is defined in the INA as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).

The plain meaning of the phrase "seeking admission" requires that the applicant

must be presently and actively seeking lawful entry into the United States.  The use the present participle in § 1225(b)(2)(A) "implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection." *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025); *see also Martinez*, 2025 WL 2084238, at *6 ("[T]he phrase 'seeking admission' is undefined in the statute but necessarily implies some sort of present-tense action."). Simply put, "[n]oncitizens who are just 'present' in the country . . ., who have been here for years upon years and never proceeded to obtain any form of citizenship[,] . . . are not 'seeking' admission" under § 1225(b)(2)(A).  *Lopez-Campos*, 2025 WL 2496379, at *6. Another district court has constructed a helpful analogy to illustrate this point:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater.  Rather, that person would be described as already present there.  Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.

*Lopez Benitez*, 2025 WL 2371588, at *7.  "As § 1225(b)(2)(A) applies only to those noncitizens who are actively 'seeking admission' to the United States, it cannot, according to its ordinary meaning, apply to [persons who have] already been residing in the United States for several years."  *Id.*  This interpretation of the statute's plain language—that a noncitizen already present in the country is not actively "seeking admission"—is also supported by the Supreme Court's summary of §§ 1225 and 1226 in *Jennings*:

> U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2).  It *also authorizes* the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289 (emphasis added).

Respondents nevertheless contend that, under § 1225, "anyone falling within the category of 'applicants for admission' is to be deemed, as a matter of law, to be seeking admission." [Doc. 13 at 11–12 (citing 8 U.S.C. § 1225(a)(3), (b)(5))].[4]  Said differently, Respondents argue that an "applicant for admission" and a person "seeking admission" are one and the same.  However, the "presumption of consistent usage and the meaningful-variation canon" instructs that "[i]n a given statute, the same term usually has the same meaning and different terms usually have different meanings."  *Pulsifer v. United States*, 601 U.S. 124, 149 (2024).  "[B]y treating the terms 'applicant for admission' and 'alien seeking admission' as synonymous, Respondents' interpretation violates the principle that Congress is presumed to have acted intentionally in choosing different words in a statute, such that different words and phrases should be accorded different meanings."  *Lopez Benitez*, 2025 WL 2371588, at *6.

---

[4] Section 1225(a)(3) states that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."  Though Respondents do not explain the basis of their reliance on § 1225(a)(3), *see* [Doc. 13 at 11–12], the Court assumes that Respondents take the "or otherwise seeking admission" language to mean that all applicants for admission are always "seeking admission" to the United States.  The Court disagrees with this interpretation.  The "otherwise seeking admission" language is simply a catch-all provision to describe individuals seeking admission and subject to inspection who may not fit the definition of "applicant for admission," such as a person not currently present in the United States.  Similarly, § 1225(a)(5) does not support Respondents' argument.  This provision states that "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States."  Again, Respondents do not explain their reliance on this section, *see* [Doc. 13 at 12], but like § 1225(b)(2)(A), the Court interprets the statute as applicable only if a few conditions are met:  (1) the individual is an applicant for admission; (2) the individual is actively seeking admission; and (3) an immigration officer has sought information from that individual.  *Cf. Martinez*, 2025 WL 2084238, at *2.

Moreover, courts avoid interpreting statutes in a way that "makes any part superfluous." *Fuller v. Norton*, 86 F.3d 1016, 1024 (10th Cir. 1996). If *all* applicants for admission are necessarily "seeking admission" under the statute, then the "seeking admission" language in § 1225(b)(2)(A) would be redundant and superfluous. *See* 8 U.S.C. § 1225(b)(2)(A) ("in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding"). If all "applicants for admission" were "seeking admission" to the country, "there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez*, 2025 WL 2371588, at *6; *Hernandez Marcelo*, 2025 WL 2741230, at *7 (collecting cases ruling similarly). "The canon against surplusage indicates that [courts] generally must give effect to all statutory provisions, so that no part will be inoperative or superfluous—each phrase must have distinct meaning." *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1283 n.15 (10th Cir. 2017).

Adopting Respondents' interpretation would also render other portions of the INA superfluous. Earlier this year, Congress amended the INA to create a new exception to § 1226's discretionary detention scheme; this new provision "mandates detention for non-citizens who meet certain criminal *and* inadmissibility criteria." *Martinez*, 2025 WL 2084238, at *7 (emphasis added); *see also* 8 U.S.C. § 1226(c)(1)(E). "[I]f, as the Government argue[s] . . ., a non-citizen's inadmissibility were alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025 amendment would have no effect." *Martinez*, 2025 WL 2084238, at *7; *see also Lopez Benitez*, 2025 WL 2371588, at *7 (reaching the same conclusion). Not only is Respondents' interpretation

contrary to the plain text of the statute, their position would also require the Court to disregard well-settled principles of statutory interpretation.

Mr. Loa Caballero has been present in the United States since approximately 2006. [Doc. 1 at ¶ 35]. Therefore, notwithstanding any lack of lawful status, Petitioner was not seeking lawful entry into the United States at the time he was detained—he was already here. He was thus not "seeking admission" and is not subject to § 1225(b)(2)(A)'s mandatory detention provision. *See Lepe v. Andrews*, --- F. Supp. 3d ----, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025) ("[P]etitioner is not actively 'seeking' 'lawful entry' because he already *entered* the United States—thirty-two years ago. If anything, petitioner is seeking to *remain* in the United States.").

### 3.    Other Factors

Although the plain text of the statute demonstrates that Mr. Caballero is not detained under § 1225, the Court briefly addresses other factors that support the Court's determination that Petitioner is detained under § 1226.

***Applicable Regulations.*** Aside from being inconsistent with the statute's plain language, Respondents' interpretation is inconsistent with the related implementing regulations. Though not binding, "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). The implementing regulations state that "any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act." 8 C.F.R. § 235.3(c)(1). The regulations define "arriving alien" as "an applicant

for admission coming or attempting to come into the United States." *Id.* § 1.2. The regulations appear "to contemplate that applicants seeking admission are a subset of applicants 'roughly interchangeable' with 'arriving aliens,'" *Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC, 2025 WL 2822876, at *11 (N.D. Cal. Oct. 3, 2025) (quoting *Martinez*, 2025 WL 2084238, at *6), and underscore the Court's interpretation of § 1225 above.

   ***Respondents' Treatment of Petitioner.***   Moreover, Respondents' treatment of Petitioner appears to conflict with their assertion that he is detained pursuant to § 1225. DHS's Notice of Custody Determination states that Mr. Loa Caballero is being detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act." [Doc. 6-2 at 6]. Section 236 of the INA is codified at § 1226. Therefore, the Government's own detention paperwork suggests that Mr. Loa Caballero is detained under § 1226, not 1225. *Lopez Benitez*, 2025 WL 2371588, at *4 ("Respondents' own exhibits unequivocally establish that Mr. Lopez Benitez was detained pursuant to Respondents' discretionary authority under § 1226(a). The warrants for Mr. Lopez Benitez's respective arrests in 2023 and 2025 explicitly authorized those arrests pursuant to 'section 236 of the Immigration and Nationality Act'—i.e., § 1226."); *cf. J.O.E.*, 2025 WL 2466670, at *8 (ordering bond hearing where the petitioner was detained under § 236 and the respondents "[did] not argue that they exercised some available procedural right to change the legal basis of [the petitioner's] arrest and detention" or "cite authority supporting the idea that they possessed that unilateral right"); *cf. Hernandez Marcelo*, 2025 WL 2741230, at *6 ("Federal Respondents are unlikely to succeed on the merits where the record evidence states Hernandez Marcelo is being detained pursuant to the discretionary detention regime of § 1226.").

Second, Petitioner's Notice to Appear contains three designation options for Petitioner: (1) "an arriving alien"; (2) "an alien present in the United States who has not been admitted or paroled"; and (3) a person "admitted to the United States, but . . . removable." [Doc. 6-2 at 2]. The issuing DHS officer did not designate Mr. Loa Caballero as an "arriving alien," which, as explained above, "is the active language used to define the scope of section 1225(b)(2)(A) in its implementing regulation." *Martinez*, 2025 WL 2084238, at *6; *see also* 8 C.F.R. § 235.3(c)(1). While the Court does not mean to suggest that DHS's paperwork is dispositive, the Court finds that it further supports the conclusion that Mr. Loa Caballero is detained under § 1226.

As another district court has observed, Respondents' interpretation of § 1225 is "contrary to the agency's own implementing regulations; its published guidance; the decisions of its immigration judges (until very recently); decades of practice; the Supreme Court's gloss on the statutory scheme; and the overall logic of our immigration system." *Romero*, 2025 WL 2403827, at *9 (internal citations omitted).[5] The Court joins the numerous courts across the country that have held that petitioners like Mr. Loa Caballero are subject to the discretionary detention framework of § 1226(a).

---

[5] *See Vazquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *15 (D. Nev. Sept. 17, 2025) (explaining that Respondents' interpretation of § 1225 is "inconsistent with . . . decades of agency practice"); *Chang Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *9 (D. Me. Sept. 29, 2025) ("[I]t would contravene decades of precedent to adopt the position that any noncitizen present in the country without admission is subject to mandatory detention without bond hearing. . . . Until recently, the Executive Branch applied § 1226(a) to noncitizens without documentation already present in the United States."); *see also Loper Bright Enters.*, 603 U.S. at 386 (a "longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is" (cleaned up)).

**B.    Legality of Petitioner's Detention**

Having concluded that Petitioner is detained under § 1226, the Court must determine whether Petitioner's mandated detention without a bond hearing is unlawful. The Court readily concludes that it is.  It is undisputed that Mr. Loa Caballero has been detained without a bond hearing, and Respondents make no argument defending a lack of a bond hearing for detainees held under § 1226(a).  *See* [Doc. 13].  And because Petitioner is detained under § 1226(a), his present detention without a bond hearing violates the INA.  The Court will thus grant the Petition with respect to Petitioner's first claim.  Since the Court's ruling on the INA claim will afford Petitioner the entirety of the relief he seeks, the Court need not address Petitioner's remaining arguments.  *See Guerrero Orellana*, 2025 WL 2809996, at *3 (declining to address due process and APA arguments after finding in petitioner's favor on statutory claim).[6]

**C.    Appropriate Remedy**

Mr. Loa Caballero requests that the Court issue a writ of habeas corpus "requiring Respondents to either release Mr. Loa Caballero immediately or provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days."  [Doc. 1 at 15].  The Court finds that an immigration judge is better suited to consider whether Petitioner poses a flight risk and a danger to the community in this instance, where there is an insufficient record before this Court.  *Cf. Alvarez v. Noem*, 25-cv-01090, 2025 WL 2942648, at *9

---

[6] The Court notes that Mr. Loa Caballero's Petition contains only limited due process analysis, [Doc. 1 at ¶¶ 50–53], and the Motion for TRO does not contain any due process analysis at all, [Doc. 6].  While his reply brief contains a more robust argument about his due process claim, [Doc. 16 at 14–15], the Court typically does not consider substantive arguments raised for the first time in a reply brief, *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011).

(W.D. Mich. Oct. 17, 2025).  Accordingly, Respondents are **ORDERED** to provide Mr. Loa Caballero a bond hearing **no later than October 29, 2025**.  During such hearing, the Respondents bear the burden of justifying detention.  *Garcia Cortes*, 2025 WL 2652880, at \*5; *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024); *Diaz-Ceja v. McAleenan*, No. 19-cv-00824-NYW, 2019 WL 2774211, at \*12 (D. Colo. July 2, 2019).  **If Respondents to not do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention.**  On or before **November 5, 2025**, the Parties shall file a joint status report concerning (1) the results of any bond hearing that was conducted or, if no hearing was held, advise the Court of the date Petitioner was released from custody; and (2) whether any additional proceedings in this matter are required.

Because the relief Mr. Loa Cabellero seeks in his Motion for TRO is identical to the relief sought in—and granted under—the Petition, the Court will respectfully **DENY** the Motion for TRO **as moot**.[7]  *See Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-

---

[7] Even if the Court were to address the preliminary injunction factors, the Court would find that Mr. Loa Caballero has satisfied each one.  To obtain a preliminary injunction, the movant must show (1) the movant is likely to succeed on the merits; (2) the movant will suffer irreparable harm absent an injunction; (3) the threatened injury outweighs any harm the injunction may pose to the opposing party; and (4) the injunction is not against the public interest.  *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 752 (10th Cir. 2024).  The third and fourth factors "merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, Petitioner has already succeeded on the merits of his statutory claim.  Second, detention without a bond hearing required by statute certainly amounts to irreparable harm.  *See Hernandez Marcelo*, 2025 WL 2741230, at \*10 ("Hernandez Marcelo remains in custody and continues to be denied an opportunity for a bond hearing related to his immigration proceedings. . . .  The loss of liberty resulting from continued custody after denial of a bond hearing constitutes irreparable harm.").  As for the merged third and fourth factors, "[p]roper governmental enforcement of § 1225 and § 1226, which includes providing a bond hearing when required, is in the public interest," and Respondents "will not be harmed by, and do not have in interest in, violation of the plain text of federal law."  *Id.* at \*11.  Respondents'

GJL, 2025 WL 2841574, at *9 (W.D. Wash. Oct. 7, 2025) (denying motion for preliminary relief as moot after granting habeas petition); *Alvarez*, 2025 WL 2942648, at *1 (same).[8]

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)     The Verified Petition for Writ of Habeas Corpus [Doc. 1] is **GRANTED in part**;

(2)     Respondents shall provide Petitioner a bond hearing no later than **October 29, 2025**.  **If Respondents to not do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention.**

(3)     On or before **November 5, 2025**, the Parties shall file a joint status report concerning (1) the results of any bond hearing that was conducted or, if no hearing was held, advise the Court of the date Petitioner was released from custody;  and  (2)  whether  any  additional  proceedings  in  this  matter  are required; and

(4)     Plaintiff's  Motion  for  Temporary  Restraining  Order  and/or  Preliminary Injunction [Doc. 6] is **DENIED as moot**.

DATED:  October 22, 2025

BY THE COURT:

Nina Y. Wang
United States District Judge

---

arguments  to  the  contrary,  which  rely  on  the  incorrect  view  that  Mr.  Loa  Caballero  is detained under § 1225(b)(2)(A), are unpersuasive.  *See* [Doc. 13 at 22–24].

[8] To the extent Petitioner seeks attorney's fees, *see* [Doc. 1 at 15], he must file a separate motion for fees that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this District.