**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Case No. 25-cv-03120-NYW

JOSE MANUEL LOA CABALLERO,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity,
NATHAN RASPER,[1] in his official capacity,
MARKWAYNE MULLIN, in his official capacity,
DAVID VENTURELLA, in his official capacity, and
TODD BLANCHE, in his official capacity,

Respondents.

---

**ORDER**

---

This matter is before the Court on the Motion for Award of Attorney's Fees Pursuant to the Equal Access to Justice Act ("Motion for Attorney's Fees") filed by Petitioner Jose Manuel Loa Caballero ("Petitioner" or "Mr. Loa Caballero"). [Doc. 28, filed March 2, 2026].[2] Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility; Nathan Rasper, in his official capacity as Field Office Director of the ICE Denver Field Office; Markwayne Mullin, in his official capacity as DHS Secretary; David Venturella, in his official capacity as the Acting Director of ICE; and Todd

[1] Pursuant to Rule 25(d), the Court substitutes the current public officers for the Field Office Director, Denver Field Office, United States Customs Enforcement ("ICE"); the Secretary of the United States Department of Homeland Security ("DHS"); the Acting Director of ICE; and the United States Attorney General as Respondents in this action.

[2] Where the Court refers to the filings made in the Electronic Case Files ("ECF") system in this action, it uses the convention [Doc. __]. When the Court refers to the ECF docket number for a different action, it uses the convention [ECF No. __]. In either case, the Court cites to the page number assigned by the ECF system.

Blanche, in his official capacity as Attorney General (collectively, "Respondents") have responded, [Doc. 29], and Petitioner has replied, [Doc. 30]. For the reasons set forth in this Order, the Motion for Attorney's Fees is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Mr. Loa Caballero is a citizen of Mexico who has lived in the United States for approximately 20 years. [Doc. 6-2 at 2; Doc. 1 at ¶ 3]. He was taken into ICE custody in September 2025 and was not given a bond hearing. [Doc. 1 at ¶ 36]. The Department of Homeland Security ("DHS") issued a Notice to Appear that designated Mr. Loa Caballero as a noncitizen "present in the United States who has not been admitted or paroled." [Doc. 6-2 at 2]. DHS also issued a Notice of Custody Determination stating that Mr. Loa Caballero is detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act" ("INA"), which is codified at 8 U.S.C. § 1226, and related regulations. [*Id.* at 6]. However, the Government then purported to detain Mr. Loa Caballero under a different statute: 8 U.S.C. § 1225(b)(2)(A). *See* [Doc. 1 at ¶¶ 17, 24, 43; Doc. 13-1 at ¶ 13].

Mr. Loa Caballero filed a Verified Petition for Writ of Habeas Corpus ("Petition") on October 3, 2025, seeking (1) a writ of habeas corpus requiring Respondents to release him or provide him a bond hearing within seven days; (2) an order enjoining Respondents from transferring him outside of the Court's jurisdiction pending the resolution of the case; and (3) attorney's fees and costs. [Doc. 1 at 15–16]. In the Petition, Mr. Loa Caballero detailed his immigration history: (1) he entered the United States around 2006 and has not left the country since that time; (2) he grew up in Colorado Springs, Colorado, attended and graduated from Harrison High School, and earned an associate degree in

art from Pikes Peak Community College; and (3) he has no criminal history that would subject him to mandatory detention under 8 U.S.C. § 1226(c). [*Id.* at ¶ 35]. At the time he filed his Petition, an immigration judge ("IJ") had not issued any ruling as to his case and he was not subject to a final order of removal. [*Id.* at ¶¶ 2, 17]. He asserted four claims for relief: (1) improper detention without access to bond in violation of 8 U.S.C. § 1226(a), *see* [*id.* at ¶ 40]; (2) improper detention without access to bond in violation of 8 C.F.R. §§ 236.1, 1236.1, and 1003.19, *see* [*id.* at ¶¶ 42–45]; and (3) improper detention without access to bond in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2), *see* [*id.* at ¶ 49]; and (4) improper detention in violation of his due process rights, *see* [Doc. 1 at ¶ 53]. He also filed a motion for temporary restraining order. *See* [Doc. 6].

Respondents filed a joint response to the Petition and the motion on October 14, 2025, arguing that (1) this Court lacked jurisdiction pursuant to 8 U.S.C. § 1252(b)(9) because "[t]he decision that Petitioner is subject to Section 1225(b)(2)(A) is a question of law arising from his removal proceedings" that can be reviewed only "by the immigration court, and ultimately by the appropriate court of appeals," [Doc. 13 at 8], and (2) Petitioner was detained mandatorily pending the completion of his pending removal proceeding pursuant to 8 U.S.C. § 1225(b)(2)(A), [*id.* at 9].

On October 22, 2025, this Court granted Mr. Loa Caballero's Petition in part, finding that it had subject matter jurisdiction over his request for a writ of habeas corpus and that he was detained subject to 8 U.S.C. § 1226(a). [Doc. 18]. The Court ordered that Petitioner be brought before an IJ for a bond hearing no later than October 29, 2025, and further ordered the Parties to file a joint status report informing the Court as to

whether Petitioner was released from custody and whether any additional proceedings in this matter were required. [*Id.* at 21]. The Court further directed Petitioner to file a separate motion for attorney's fees, should he seek them. [*Id.* at 21 n.8].

Subsequently, the Parties informed the Court that the IJ ordered Petitioner released upon the posting of a monetary bond; Mr. Loa Caballero posted a monetary bond; and Petitioner was released on November 3, 2026. [Doc. 19; Doc. 20-1]. This instant Motion followed on March 2, 2026.

**LEGAL STANDARD**

Except as otherwise specifically provided by statute, the Equal Access to Justice Act ("EAJA") authorizes the Court to award attorney's fees and expenses in civil actions brought by or against the United States or any agency or any official of the United States to a prevailing party (other than the United States), unless the Court "finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Tenth Circuit has expressly held that habeas actions challenging immigration detention constitute "civil actions" under the EAJA. *See Daley v. Ceja*, 158 F.4th 1152, 1156 (10th Cir. 2025). "Under the EAJA a party can recover attorney's fees against the United States if (1) he was the prevailing party, (2) the government's position in the case was not substantially justified, (3) the party is eligible to receive an award; and (4) the amount sought is reasonable." *Alarcon v. Baltazar*, --- F. Supp. 3d ----, 2026 WL 2085614, at *2 (D. Colo. July 17, 2026).

Respondents bear the burden of showing that their legal positions were substantially justified. *See Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995). "The test for substantial justification in this circuit is one of reasonableness in law and fact." *Id.*

This Court considers the totality of the circumstances because, "the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Commissioner v. Jean*, 496 U.S. 154, 161–62 (1990). Additionally, the government's prelitigation actions and litigation position "are both relevant to the inquiry and both must be reasonable in fact and law." *Al-Maleki v. Holder*, 558 F.3d 1200, 1207 (10th Cir. 2009).

Because Respondents do not challenge that Petitioner was the prevailing party or that he is eligible to receive an award of EAJA fees, this Court's analysis focuses on factors two and four, i.e., whether Respondents' position was substantially justified and whether the amount of fees sought is reasonable.

## ANALYSIS

### I. Substantially Justified

The EAJA defines "position of the United States" as:

> [i]n addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings.

28 U.S.C. § 2412(d)(2)(D). Thus, this Court considers Respondents' pre-litigation and litigation conduct as a whole, making only "one threshold determination for the entire civil action." *Jean*, 496 U.S. at 159.

***Reversal of Prelitigation Position.*** Prior to the inception of this litigation, DHS's Notice of Custody Determination stated that Mr. Loa Caballero was being detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act." [Doc. 6-2 at 6]. Section 236 of the INA is codified at § 1226. Furthermore,

Petitioner's Notice to Appear contained three designation options for Petitioner: (1) "an arriving alien"; (2) "an alien present in the United States who has not been admitted or paroled"; and (3) a person "admitted to the United States, but . . . removable." [Doc. 6-2 at 2]. The issuing DHS officer did not designate Mr. Loa Caballero as an "arriving alien," which "is the active language used to define the scope of section 1225(b)(2)(A) in its implementing regulation." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025); *see also* 8 C.F.R. § 235.3(c)(1). Therefore, Respondents' own pre-litigation detention paperwork reflected its own belief that Mr. Loa Caballero was detained under § 1226, not § 1225. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) ("Respondents' own exhibits unequivocally establish that Mr. Lopez Benitez was detained pursuant to Respondents' discretionary authority under § 1226(a).").

Respondents do not even attempt to explain—let alone justify—their reversal from their initial repeated notices to Mr. Loa Caballero that he was detained under § 1226 to their later litigation position that Petitioner was subject to mandatory detention pursuant to § 1225. *See generally* [Doc. 29].

***Subject Matter Jurisdiction.*** Once litigation commenced, the obvious focus of Mr. Loa Caballero's Petition was his detention by ICE without access to a bond hearing. Not once did Mr. Loa Caballero ask this Court to pass on whether he could be lawfully removed from the United States—or suggest that this Court had jurisdiction over such question. *See generally* [Doc. 1]. Nevertheless, Respondents argued that this Court was divested of subject matter jurisdiction to hear Petitioner's challenge pursuant to 8 U.S.C. § 1252(a)(5). [Doc. 13 at 7–9]. Respondents also suggested that Mr. Loa Caballero could raise his legal challenge "through his immigration court proceedings, and if he is

unsuccessful, in the court of appeals," without any explanation as to how Petitioner could do so or any citation to supporting authority. [*Id.* at 8].

The privilege of the writ of habeas corpus is rooted in the Constitution itself that provides: "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I, § 9, cl. 2. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001), *superseded by statute as recognized in Nasrallah v. Barr*, 590 U.S. 573, 580–81 (2020) (footnote omitted). As the *St. Cyr* Court observed:

> In England prior to 1789, in the Colonies, and in this Nation during the formative years of our Government, the writ of habeas corpus was available to nonenemy aliens as well as to citizens. It enabled them to challenge Executive and private detention in civil cases as well as criminal. Moreover, the issuance of the writ was not limited to challenges to the jurisdiction of the custodian, but encompassed detentions based on errors of law, including the erroneous application or interpretation of statutes. It was used to command the discharge of seamen who had a statutory exemption from impressment into the British Navy, to emancipate slaves, and to obtain the freedom of apprentices and asylum inmates. Most important, for our purposes, those early cases contain no suggestion that habeas relief in cases involving Executive detention was only available for constitutional error.

533 U.S. at 301–03 (footnotes omitted). Section 2241(a) of Title 28 of the United States Code vests authority in district courts within their respective jurisdictions to grant writs of habeas corpus. 28 U.S.C. § 2241(a).

Supreme Court authority has long held that detained non-citizens in immigration proceedings may still seek habeas relief from district courts, even in the face of jurisdiction-stripping provisions in immigration statutes. For instance, in *Demore v. Kim*,

the Supreme Court concluded that a habeas challenge to the statutory framework that permitted a noncitizen's detention without bail was not jurisdictionally barred. *See* 538 U.S. 510, 517 (2003). And in *Jennings v. Rodriguez*, the Supreme Court specifically held that where "respondents are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined," § 1252(b)(9) "does not present a jurisdictional bar." 583 U.S. 281, 294–95 (2018).

And as noted in the Court's order granting habeas relief, "[a] petition for review with the BIA and then the court of appeals cannot substitute for habeas review of ongoing detention." *A.A. v. Olson*, 811 F. Supp. 3d 1021, 1031 (D. Minn. 2025). "While challenges to *removal* can be heard in a petition for review after an order of removal has been entered by an immigration judge and affirmed by the Board of Immigration Appeals, the same is not true of constitutional challenges to *detention* like the ones raised by" Petitioner here. *Ozturk v. Hyde*, 136 F.4th 382, 400 (2d Cir. 2025). Indeed, "neither the [immigration judge] nor the BIA has jurisdiction to decide constitutional issues." *Id.* (quotation omitted). "Nor does the [Tenth] Circuit have authority to conduct or order a bond hearing in the first instance; its review of immigration matters is limited to the administrative record accompanying a final removal order." *A.A.*, 811 F. Supp. 3d at 1031 (citing 8 U.S.C. § 1252(b)(4)(A)). Despite this clear authority, Respondents persisted with their jurisdictional arguments. In their Response to the instant Motion for Attorney's Fees, however, Respondents do not even attempt to justify this position or argue that this position was substantially justified. *See generally* [Doc. 29].

***Statutory Basis for Detention.*** The only issue that Respondents address in their Response is that their statutory detention argument was substantially justified, pointing to a Fifth Circuit case and a number of district court cases. [Doc. 29 at 4–5]. As an initial matter, this Court is not bound by any of the cases cited by Respondents. *See United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020) ("[D]istrict courts in this circuit are bound by [Tenth Circuit] decisions and those of the United States Supreme Court—they are not bound by decisions of other district courts."); *Palmer v. Kaiser Found. Hosps. Tech. Risk Off.*, No. 16-cv-02376-WJM-KMT, 2017 WL 4564251, at *2 (D. Colo. Oct. 13, 2017) (observing that a district court was not bound by cases from other circuits), *aff'd*, 753 F. App'x 590 (10th Cir. 2018).

Since the filing of Petitioner's Motion for Attorney's Fees, the Tenth Circuit has definitively determined that "[t]he only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border." *Santillan Quiroz v. Mullin*, 180 F. 4th 1226, 1239 (10th Cir. 2026). Specifically, the *Santillan Quiroz* court stated:

> [O]nce a noncitizen has entered unlawfully, no amount of legal maneuvering allows him to go back in time and make his initial entry lawful. The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border.

*Id.* (footnote omitted). The Tenth Circuit observed that its holding was in harmony with the Government's and the Supreme Court's long-standing understanding that § 1225(b)(2)(A) applies at the border while § 1226(a) applies to the interior, which was most recently ratified by the Lake Riley Act, codified at 8 U.S.C. § 1226(c)(1)(E). *Id.* at 1247–48.

The overwhelming majority of circuit courts have joined the Tenth Circuit in rejecting Respondents' interpretation of the applicability to § 1225(b)(2)(A) to individuals, like Mr. Loa Caballero, who do not stand at the border seeking admission but are within the interior of the United States, albeit without legal status. *Guerrero Orellana v. Moniz*, 188 F.4th 1 (1st Cir. 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Buele Morocho v. Warden Phila. FDC*, 189 F.4th 287 (3d Cir. 2026); *Lopez Garcia v. Guadian*, 190 F.4th 305 (4th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909 (7th Cir. 2026); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026); *Hernandez Alvarez v. Warden*, 175 F.4th 1258 (11th Cir. 2026). *But see Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). The Supreme Court has granted certiorari to decide this issue. *See Rhoney v. Barbosa da Cunha*, No. 26-104, 2026 WL 2942994, at *1 (U.S. Oct. 1, 2026). But this Court need not consider this individual litigation position in isolation, because weighing all of the circumstances of Mr. Loa Caballero's case together, as it must, the Court finds that Respondents have not carried their burden to establish that the position of the United States, as defined by the EAJA, was substantially justified.

## II. Reasonable Fees

Having concluded that Respondents have failed to carry their burden of establishing substantial justification for their position, the Court considers the remaining disputed issue, i.e., whether the amount of fees sought by Petitioner is reasonable. *See* 28 U.S.C. § 2412(d)(2)(A) (permitting an eligible prevailing party to recover "reasonable attorney fees."). "The starting point for any calculation of a reasonable EAJA fee under

that rubric is the 'lodestar,' that is, the number of hours reasonably expended multiplied by a reasonable hourly rate." *Meadors v. Bisignano*, No. 25-cv-01514-REB, 2025 WL 2737408, at *1 (D. Colo. Sept. 19, 2025). The fee applicant bears the burden of establishing his entitlement to an award of fees, including the reasonableness of the number of hours worked and the rate claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The determination of reasonable fees lies within the sound discretion of the district court. *Id.*

Respondents do not challenge the number of hours spent by Petitioner's counsel in this matter. *See* [Doc. 29 at 5–11]. Nor do they appear to challenge the application of the adjusted statutory rate of $258 per hour for attorney Daniel Herrera ("Mr. Herrera") and $150 per hour for law clerks and paralegals. [*Id.*]. But they do challenge any hourly rate beyond $258 for attorneys Hans Meyer ("Mr. Meyer") and Conor Gleason ("Mr. Gleason"). [*Id.*]. The Court now turns to the consideration of the appropriate award.

***Hours.*** Although Respondents have waived any objection to the number of hours or type of work performed by Petitioner's counsel, *see Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011) (holding that "[i]f the theory was intentionally relinquished or abandoned in the district court, we usually deem it waived and refuse to consider it"), this Court independently reviewed the number of hours and work performed for both the filing of the original Petition (23.6 hours) and the instant Motion for Attorney's Fees (7.8 hours for the initial Motion and 9.4 hours for the reply brief), *see* [Doc. 28-8; Doc. 28-9; Doc. 30-1], to assure itself that Petitioner had carried his burden. Upon review, and given the novel issue this case involved, this Court finds the hours claimed to be reasonable and in line with the number of hours claimed by other immigration law

practitioners in similar cases. *See Martinez-Orellana v. Valdez*, No. 26-cv-00355-WJM, 2026 WL 2969070, at *4 (D. Colo. Oct. 2, 2026) (observing that the average time expended in immigration habeas cases by counsel for the prevailing petitioner was approximately 27.8 hours); *Huang v. Mullin*, No. 25-cv-03788-RMR, 2026 WL 3082257, at *3 (D. Colo. Oct. 15, 2026) (finding 24.65 hours appropriate for EAJA fees).

***Hourly Rate.*** The Court next considers the reasonable hourly rate for Messrs. Meyer and Gleason. "EAJA provides that attorney fees are not to be awarded in excess of $125 per hour unless the Court determines that an increase in the cost of living or a special factor justifies a higher fee." *Morales Lopez v. Baltazar*, 834 F. Supp. 3d 1193, 1206 (D. Colo. 2026). The Parties agree that, with the applicable cost of living adjustment, the applicable EAJA rate is $258 per hour. [Doc. 28 at 15; Doc. 29 at 10]. Mr. Meyer requests an hourly rate of $714 per hour and Mr. Gleason requests an hourly rate of $640 per hour. [Doc. 28 at 13].

Counsel rely on both the "Laffey Matrix," issued by the Department of Justice, and the "Fitzpatrick Matrix," which was developed by the United States Attorney's Office for the District of Columbia, and aver that courts within the District of Columbia and Ninth Circuit have approved its use. [*Id.*]. "To determine what constitutes a reasonable rate, the district court considers the prevailing market rate <u>in the relevant community</u>." *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (emphasis added and quotation omitted). While the Laffey and Fitzpatrick Matrices may be appropriate benchmarks for the District of Columbia or courts within the Ninth Circuit, Petitioner has not persuaded this Court that either Matrix has anything to do with the prevailing rates for immigration cases in the District of Colorado. As an initial matter, neither of the two cases cited by Petitioner in

support of the Fitzpatrick Matrix is a habeas case. *See* [Doc. 28 at 13]. In addition, Petitioner cites no Colorado court—nor could this Court find one—that considered the Fitzpatrick Matrix in determining the appropriate hourly rate in this District.

While this Court is not bound by decisions of other district courts, *see Rhodes*, 834 F. App'x at 462, this Court finds it appropriate to consider other courts' determinations of reasonable rates, as these determinations are relevant to establish the prevailing market rate, *see Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1079 (10th Cir. 2002) (holding that a district court may use other relevant factors, including its own knowledge, to establish the reasonable rate). The rates requested by Mr. Loa Caballero exceed the rates that courts in this District have generally granted in similar cases—including the cases reflected in Petitioner's Notices of Supplemental Authority. *See, e.g.*, *Lissitchev v. Baltasar*, No. 25-cv-03790-KAS, 2026 WL 2661428, at *3 (D. Colo. Sept. 9, 2026) (awarding requested hourly rate of $276.36); *Morales Lopez*, 834 F. Supp. 3d at 1206 (awarding $270.90 hourly rate as adjusted for the cost of living). *See also* [Doc. 33-1; Doc. 33-2; Doc. 33-3; Doc. 34-1].

This Court also notes that the hourly rates requested by Mr. Meyer and Mr. Gleason far exceed any hourly rate that these specific attorneys have previously been awarded—and in some cases, requested. *See, e.g.*, *Chavarria v. Baltazar*, No. 26-cv-00712-WJM, 2026 WL 2517006, at *5 (D. Colo. Aug. 26, 2026) (determining the reasonable hourly rate for Mr. Meyer was $487.56 (the average of $714 and the cost-of-living adjusted rate of $261.12) and for Mr. Gleason was $450.56 (the average of $640 and the cost-of-living adjusted rate of $261.12)); *Ugarte Hernandez v. Baltazar*, No. 25-cv-04066-RBJ, ECF No. 28 (D. Colo. June 15, 2026) (requesting rate of $276 for Mr.

Meyer and Mr. Gleason); ECF. No. 30 (D. Colo. July 16, 2026) (awarding that rate); *Viruel Arias v. Choate*, No. 22-cv-02238-CNS, ECF No. 24 (D. Colo. Feb. 7, 2023) (seeking $234.95 per hour for Mr. Gleason while he worked at an immigration non-profit); ECF No. 28 (D. Colo. July 12, 2023) (granting motion).

Mssrs. Meyer and Gleason have requested their respective $714 and $640 rates in a number of other cases in this District, most of which motions remain pending. In *Chavarria v. Baltazar*, the court permitted an enhancement of the statutory rate, though not to the extent requested by Mssrs. Meyer and Gleason. *See* 2026 WL 2517006, at *5. Specifically, the court in *Chavarria* landed on a reasonable rate by calculating the mean of the requested rate and the adjusted statutory rate. *See id.* The *Chavarria* court did not elucidate how it settled upon its methodology, though, and the Court could not locate other cases employing it.

With these analogous cases in mind, the Court turns to the specific circumstances presented in this case. Mssrs. Meyer and Gleason argue that their requested hourly rates are reasonable because immigration law is complex, they have specialized knowledge and experience in this area of the law, and the adjusted EAJA rate is lower than the market rate in Denver. [Doc. 28. at 8–12].

Mr. Meyer has over 19 years of experience and Mr. Gleason has over 12 years of experience, [*id.* at 10–11], and this substantial experience has helped them become subject-matter experts. Indeed, they have presented evidence that they are viewed in their field as "highly specialized litigators." *See* [Doc. 28-4 at ¶ 14]. Although "[i]ncomparable expertise, standing alone, will not justify [a] higher rate," *Vibra-Tech Eng'rs v. United States,* 787 F.2d 1416, 1420 (10th Cir. 1986), this specialized experience

is nevertheless relevant to the Court's determination. For instance, the attorney in *Morales Lopez* has significantly less experience than Mssrs. Meyer and Gleason. *See Morales Lopez v. Baltazar*, No. 25-cv-03078-WJM-KAS, ECF No. 56 at (D. Colo. Feb. 22, 2026 (Mr. Morales Lopez's counsel stating that this was her "first federal habeas action").

Furthermore, the Court agrees that the field of immigration law can be complex, and particularly in these unlawful detention cases, time is of the essence. And this Court also recognizes that Mr. Loa Caballero filed his Petition near the beginning of the deluge of immigration habeas petitions now before the federal courts. Indeed, at the time this case was initiated, the core issue—whether Respondents could subject petitioners in Mr. Loa Caballero's position to detention pursuant to § 1225(b)(2)(A) versus § 1226(a)—had been decided by a few dozen district courts across the country, *see* [Doc. 1 at ¶¶ 26–27 (collecting cases)], but it has now been decided thousands of times. In other words, Petitioner's counsel prevailed by presenting arguments on a novel issue, without binding precedent, and they did so under pressing time constraints. Other courts have concluded that similar circumstances warrant an increase of the statutory rate. *See, e.g.*, *Constantinovici v. Bondi*, No. 3:25-cv-02405-RBM-AHG, 2026 WL 2020467, at *3 (S.D. Cal. July 13, 2026) (finding that counsel's specific expertise was necessary to secure relief, and awarding limited enhancement over statutory rate, where "at the time the Court issued its decision in this action, the unprecedented influx of immigration habeas cases filed in federal district courts across the country had only recently begun"); *cf. V. v. Mullin*, No. 26-cv-02520-ECT-JFD, 2026 WL 3308164, at *4 (D. Minn. Aug. 10, 2026) ("Courts in this District have found that a $500 hourly fee was merited for successfully litigating habeas petitions over immigration detention during the period of increased immigration

enforcement efforts in Minnesota.”).

Given all the data points available, while Petitioner’s counsel have not demonstrated that the requested $714 and $640 rates are reasonable under the circumstances, the Court finds that a modest enhancement of the adjusted statutory rate is appropriate. Specifically, the Court will enhance the $258 hourly rate by $100 per hour for Mr. Meyer and for Mr. Gleason, awarding each $358 per hour for the time they spent on this case.[3] *See Constantinovici*, 2026 WL 2020467, at *3 (finding limited $100 per hour enhancement appropriate in similar circumstances). The Court calculates its award of attorney’s fees as follows:

| **Individual(s)** | **Hours expended** | **Rate** | **Total** |
|---|---|---|---|
| Hans Meyer | 14.6 hours | $358 per hour | $5,226.80 |
| Conor Gleason | 11.8 hours | $358 per hour | $4,224.40 |
| Daniel Herrera | 7.4 hours | $258 per hour | $1,909.20 |
| Anahi Quezada and Lourdes Cervantes | 3.8 hours | $150 per hour | $570.00 |
| | | | **Total award: $11,930.40** |

Accordingly, for the reasons set forth in this Order, the Motion for Attorney’s Fees is **GRANTED in part** and **DENIED in part**. Petitioner is **AWARDED $11,930.40** in attorney’s fees.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Petitioner’s Motion for Award of Attorney’s Fees Pursuant to the Equal Access to Justice Act [Doc. 28] is **GRANTED in part** and **DENIED in part**; and

[3] In so deciding, the Court does not conclude that the reasonable hourly rate for all immigration attorneys, or even Mr. Meyer or Mr. Gleason in other cases. Rather, this Court weighs the specific circumstances of this case.

(2) Petitioner is **AWARDED $11,930.40** in attorney's fees pursuant to the Equal Access to Justice Act.

DATED: November 12, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge